USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/10/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                      :

UNITED STATES             :

           -v-           :

MATTHEW VADO,          :

                Defendant.    :

                      :
------------------------------------------------------------------X

14 Cr. 666 (PAE)

OPINION &amp; ORDER

PAUL A. ENGELMAYER, District Judge:

At issue here is whether defendant Matthew Vado's 2011 conviction for the New Jersey offense of criminal sexual contact in the fourth degree, N.J. Stat. Ann. § 2C:14-3, triggers the sentence enhancement provisions of three federal child-pornography statutes. Vado is charged in this Court with the production, receipt, and possession of child pornography, in violation of, respectively, 18 U.S.C. §§ 2251(a), 2252A(a)(2)(B), and 2252A(a)(5)(B). Each statute contains a mandatory penalty provision which applies where the defendant has a prior conviction under, *inter alia*, state law "relating to" either "aggravated sexual abuse," "sexual abuse," or, depending on the provision, "abusive sexual contact involving a minor" or "abusive sexual conduct involving a minor" (together, "abusive sexual contact/conduct involving a minor"). If Vado's 2011 conviction is such an offense, these penalty provisions will (1) impose (or raise) a mandatory minimum sentence on each count, and (2) raise the maximum sentence on that count.

To determine whether a state conviction triggers these provisions, the Court utilizes a categorical, or elements-based, analysis, asking whether the state offense, however committed, necessarily meets the requirements of the federal penalty provision. Here, therefore, the Court must determine whether a violation of the New Jersey criminal sexual contact statute necessarily

"relat[es] to" sexual abuse or to abusive sexual contact/conduct involving a minor within the meaning of those federal statutory terms. Vado argues that the New Jersey statute applies to conduct outside the scope of the federal penalty provisions. Specifically, he argues that although the New Jersey statute and the federal penalty provisions both apply where a defendant touches his or another's intimate parts for the purpose of sexual arousal or gratification, New Jersey's statute applies—but the federal penalty provisions do not—where such touching is "for the purpose of degrading or humiliating the victim." N.J. Stat. Ann. § 2C:14-1. The Government counters that such conduct does, in fact, qualify as—or in any event "relat[es] to"— "sexual abuse" or "abusive sexual contact/conduct involving a minor."

The parties have jointly asked the Court to resolve, prior to trial or other disposition of the charges against Vado, whether the federal penalty provisions apply here. The Court has agreed to do so—because the question is close; because the penalty provisions, if triggered, dramatically affect the sentencing consequences for Vado of a plea or trial conviction to any of the charged offenses; and because the parties have represented that resolving this issue will facilitate their plea negotiations.

For the following reasons, the Court grants Vado's motion. The Court holds that his prior conviction does not trigger the sentence enhancements in § 2251 or § 2252A.

## I.   Background

On October 6, 2014, Vado was indicted by a Grand Jury, which charged him, in 10 counts, of violating federal child pornography statutes. Dkt. 13. Eight counts charged production of child pornography, in violation of 18 U.S.C. § 2251(a); another charged receipt of child pornography, in violation of § 2252A(a)(2)(B); and a tenth charged possession of child pornography, in violation of § 2252A(a)(5)(B). *Id.*

On January 6, 2015, Vado moved to suppress statements he had made during a search of his home, pursuant to a warrant, on June 17, 2014.  Dkt. 24–26.  On January 20, 2015, following a suppression hearing, the Court denied Vado's motion.  Dkt. 30.

On January 30, 2015, Vado filed a second pretrial motion, seeking a determination that his 2011 conviction for criminal sexual contact in the fourth degree under New Jersey law does not qualify as a predicate offense so as to trigger the sentence enhancements in § 2251 and § 2252A.  Dkt. 34.  Vado also filed a memorandum of law, Dkt. 36 ("Def. Br."), and a declaration, Dkt. 35 ("Def. Decl.").[1]  On February 20, 2015, the Government submitted its opposition.  Dkt. 37 ("Gov. Br.").

On February 25, 2015, the Court heard argument.  *See* Dkt. 42 ("Tr.").  At argument, both sides urged the Court, to facilitate their plea discussions, to resolve whether Vado's 2011 conviction under New Jersey law would trigger the federal sentence enhancements.  *See* Tr. 4–5.  The Court was persuaded to do so.[2]  On the merits, argument focused on whether, as Vado argued, his prior conviction was for an offense not "relating to" sexual abuse or abusive sexual contact/conduct involving a minor.

---

[1] On January 23, 2015, the parties had submitted a joint factual stipulation to assist the Court in resolving this motion.  Dkt. 33 ("Stip.").

[2] Resolving this important question now will help assure that any plea by Vado to a charged offense would be "done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'"  *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).  A defendant, the Second Circuit has stated, must be "'aware of actual sentencing possibilities'" before pleading guilty to any charges, *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992) (quoting *Hunter v. Fogg*, 616 F.2d 55, 58 (2nd Cir. 1980)), including "'the mandatory minimum penalty provided by law . . . and the maximum possible penalty provided by law,'" *United States v. Fernandez*, 877 F.2d 1138, 1142–43 (2d Cir. 1989) (quoting *Hunter*, 616 F.2d at 60).

In the course of argument, the Court raised with counsel whether the definition of "sexual contact," as used in a different statute, 18 U.S.C. § 2246, bears on the definition of that term as used in one of the penalty provisions at issue here, *id.* § 2251(e), and on the definition of "sexual conduct" as that term is used in the other two penalty provisions at issue, *id.* §§ 2252A(b)(1), (b)(2). *See* Tr. 9–22. On March 6, 2015, at the Court's direction, the parties submitted supplemental briefing on that point. Dkt. 40 ("Gov. Supp. Br."); Dkt. 41 ("Def. Supp. Br.").

## II.   Applicable Legal Principles

### A.   Relevant Federal Sentencing Enhancement Provisions

Vado stands charged with production, receipt, and possession of child pornography. Each of the three statutes under which he is charged contains a sentencing enhancement provision triggered by a state conviction "relating to" (1) "aggravated sexual abuse," (2) "sexual abuse," or (3) in the case of one statute, "abusive sexual contact involving a minor," and in the case of the other two, "abusive sexual conduct involving a minor." Specifically:

Under 18 U.S.C. § 2251, which prohibits production of child pornography:

> Any individual who violates, or attempts or conspires to violate, this section shall be fined under this title and imprisoned not less than 15 years nor more than 30 years, but if such person has one prior conviction under this chapter . . . or under the laws of any State relating to aggravated sexual abuse, sexual abuse, [or] abusive sexual contact involving a minor . . . such person shall be fined under this title and imprisoned for not less than 25 years nor more than 50 years[.]

*Id.* § 2251(e).

Under 18 U.S.C. § 2252A(b)(1), the penalty provision applicable to violations of 18 U.S.C. § 2252A(a)(2)(B), which prohibits receipt of child pornography:

> Whoever violates, or attempts or conspires to violate, paragraph (1), (2), (3), (4), or (6) of subsection (a) shall be fined under this title and imprisoned not less than 5 years and not more than 20 years, but, if such person has a prior conviction under this chapter . . . or under the laws of any State relating to aggravated sexual abuse, sexual

4

abuse, or abusive sexual conduct involving a minor . . . such person shall be fined under this title and imprisoned for not less than 15 years nor more than 40 years.

And, under 18 U.S.C. § 2252A(b)(2), the penalty provision applicable to violations of 18 U.S.C. § 2252A(a)(5)(b), which prohibits possession of child pornography:

Whoever violates, or attempts or conspires to violate, subsection (a)(5) shall be fined under this title or imprisoned not more than 10 years, or both, but . . . if such person has a prior conviction under this chapter . . . or under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor . . . such person shall be fined under this title and imprisoned for not less than 10 years nor more than 20 years.

A defendant's prior conviction under a state law that meets these penalty provisions thus has serious implications for his federal sentence. It increases the prison term (1) for producing child pornography from 15–30 years to 25–50 years imprisonment, *id.* § 2251(e), (2) for receiving child pornography from 5–20 years to 15–40 years imprisonment, *id.* § 2252A(b)(1), and (3) for possessing child pornography from 0–10 to 10–20 years imprisonment, *id.* § 2252A(b)(2).

## B. Legal Framework for Evaluating Whether a State Offense Qualifies as a Predicate Offense under the Federal Sentencing Enhancement Provisions

"To determine whether a state offense qualifies as a predicate offense for a federal mandatory minimum sentence, 'courts generally take a categorical or modified categorical approach.'" *United States v. Barker*, 723 F.3d 315, 319 (2d Cir. 2013) (quoting *United States v. Beardsley*, 691 F. 3d 252, 259 (2d Cir. 2012)). Under these approaches, sentencing courts do not examine the facts underlying a defendant's prior conviction. Instead, courts "'look only to the statutory definitions—*i.e.*, the elements—of a defendant's prior offense[], and *not* to the particular facts underlying th[at] conviction[]." *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013).

The categorical approach applies where a state offense has a "single, indivisible set of elements": The sentencing court simply "compare[s] the statute forming the basis of the defendant's prior conviction with the applicable generic offense in the federal sentencing statute." *Barker*, 723 F.3d at 319–20 (citation omitted).

The modified categorical approach, in turn, applies "when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." *Descamps*, 133 S. Ct. at 2283. Where a statute is "divided into disjunctive subsections" or is otherwise "divisible" into alternative sets of elements, "courts may, to a limited extent in order to discover the elements of the prior conviction, 'consider facts underlying the prior conviction if they are based upon adequate judicial record evidence.'" *Barker*, 723 F.3d at 319–20 (citations omitted). By permitting a court to isolate the portion of a divisible statute under which a defendant was prosecuted, the modified categorical approach facilitates review under the categorical approach. Importantly, however, "[o]nce the district court has identified the particular provision of state law under which the defendant was convicted, the district court must then compare the elements of that provision to the generic federal sentencing enhancement to determine its applicability just as it would under a categorical approach." *Id.* at 320. There is, in other words, no charter under the modified categorical approach for inquiring into the facts of an individual defendant's prior offense.

Ordinarily, in performing this analysis, the sentencing court simply inquires whether the state law in question can, in *any* application, cover conduct outside the scope of the generic federal offense. For example, the Armed Career Criminal Act ("ACCA") provides for an enhanced sentence if the defendant has a prior conviction for a "violent felony," defined to include a crime punishable by a year or more imprisonment that "(i) has as an element the use,

attempted use, or threatened use of physical force against the person of another or (ii) is burglary,

arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a

serious risk of physical injury to another." *See* 18 U.S.C. § 924(e)(2)(B). If the state statute

under which the defendant was convicted "sweeps more broadly than the generic [federal] crime,

a conviction under that law cannot count as an ACCA predicate." *Descamps*, 133 S. Ct. at

2283.[3]

The sentencing-enhancement provisions at issue here are unusual in one respect. They

provide for an enhanced sentence not merely where the state offense qualifies as an offense

enumerated in the federal penalty provision (*e.g.*, where the prior offense was for sexual abuse),

but also when the state offense is one "*relating to*" these offenses (*e.g.*, where the prior offense

"relat[ed] to" sexual abuse). *See* 18 U.S.C. §§ 2251(e), 2252A(b)(1), 2252A(b)(2). Thus, the

inquiry used in applying the categorical approach is not whether the state offense is itself

inherently, for example, one of sexual abuse, but whether it inherently "relates to" sexual abuse.

The Second Circuit has "broadly interpreted" the phrase "'relating to' "to apply not simply to

state offenses that are equivalent to sexual abuse, but rather to any state offense that stands in

some relation [to], bears upon, or is associated with [the] generic offense.'" *Barker*, 723 F.3d at

322–23 (quoting *United States v. Strickland*, 601 F.3d 963, 967 (9th Cir. 2010)) (alterations in

original). As the Second Circuit has explained, Congress, in enacting these penalty provisions,

"recognize[ed] the diversity among the several states in the *specific elements* of sexual

---

[3] Applying the categorical approach, the Second Circuit has held, for example, that attempted
burglary under New York law is a "violent felony" within the meaning of the ACCA because it
necessarily "presents a serious potential risk of physical injury to another," *United States v.
Lynch*, 518 F.3d 164, 170 (2d Cir. 2008), whereas statutory rape under New York law is not a
"violent felony" because that offense does not uniformly involve "purposeful, violent, and
aggressive conduct" that presents such a risk, *United States v. Van Mead*, 773 F.3d 429, 437 (2d
Cir. 2014).

misconduct laws" and "intend[ed]" that the category of predicate offenses "potentially encompass convictions under a variety of state laws." *Id.* at 323.

### III.    Discussion

In light of the above, Vado's 2011 conviction triggers the sentence enhancements in § 2251 and § 2252A if the prior offense either: (1) was one of sexual abuse, or abusive sexual contact involving a minor, *see* 18 U.S.C. § 2251(e), or abusive sexual conduct involving a minor, *see id.* §§ 2252A(b)(1), 2252A(b)(2),[4] or (2) is "related to" those predicate offenses.  To evaluate these questions, the Court first reviews the elements of the New Jersey statute that Vado was convicted of violating, and then addresses these two possibilities in turn.

### A.    The Elements of Vado's 2011 Conviction for Criminal Sexual Contact

In 2011, Vado pled guilty to two counts of criminal sexual contact in the fourth degree, in violation of the New Jersey Code of Criminal Justice § 2C:14-3.[5]  Under that section, "[a]n actor is guilty of criminal sexual contact if he commits an act of sexual contact with the victim under any of the circumstances set forth in section 2C:14-2c (1) through (4)."

Definitions contained in § 2C:14-3, § 2C:14-1 of the New Jersey Code defines "sexual contact" as "an intentional touching by the victim or actor, either directly or through clothing, of the victim's or actor's intimate parts," meaning the "sexual organs, genital area, anal area, inner thigh, groin, buttock or breast," "for the purpose of degrading or humiliating the victim or

---

[4] The penalty provisions also apply to convictions relating to "aggravated sexual abuse," but inasmuch as any such conviction would also qualify as one relating to "sexual abuse," the Court's ensuing analysis proceeds without reference to the term "aggravated sexual abuse."

[5] The New Jersey Code of Criminal Justice sorts sexual crimes into first, second, third, and fourth degree crimes. *See, e.g.*, N.J. Stat. Ann. § 2C:14-2a (defining aggravated sexual assault as a first-degree offense); *id.* § 2C:14-2c (defining sexual assault as a second-degree offense).  The most serious iteration of criminal sexual contact is defined as a third-degree offense. *See id.* § 2C:14-3a (defining aggravated criminal sexual contact as such).

sexually arousing or sexually gratifying the actor." N.J. Stat. Ann. § 2C:14-1d.  And § 2C:14-2c of that Code identifies the circumstances under which the sexual contact must occur as "any one of the following":

> (1) The actor uses physical force or coercion, but the victim does not sustain severe personal injury;
>
> (2) The victim is on probation or parole, or is detained in a hospital, prison or other institution and the actor has supervisory or disciplinary power over the victim by virtue of the actor's legal, professional or occupational status;
>
> (3) The victim is at least 16 but less than 18 years old and:
> (a) The actor is related to the victim by blood or affinity to the third degree; or
> (b) The actor has supervisory or disciplinary power of any nature or in any capacity over the victim; or
> (c) The actor is a resource family parent, a guardian, or stands in loco parentis within the household;
>
> (4) The victim is at least 13 but less than 16 years old and the actor is at least four years older than the victim.

The New Jersey statute—insofar as it identifies the circumstances necessary for sexual contact to trigger criminal liability—is divided into disjunctive subsections and is readily divisible into alternative sets of elements.  The parties therefore agree, as does the Court, that the Court may utilize the modified categorical approach to ascertain the elements of Vado's conviction (*i.e.*, to ascertain the subsection of § 2C:14-2c that applied to Vado's conviction).  *See Barker*, 723 F.3d at 319–20.[6]

---

[6] The Government fairly notes that the Court could, alternatively, have applied the categorical approach instead of the modified categorical approach, because (1) the definition of "sexual contact" in § 2C:14-1 applies to all four parts of § 2C:14-2c, and (2) none of the particulars of the four circumstances set forth in § 2C:14-2c prevent the federal enhancement from applying. Gov. Br. 6 n.1.  The modified categorical approach is nevertheless a helpful tool here because, by isolating § 2C:14-2c(4) as the subsection which Vado pled guilty to violating, it facilitates a concrete discussion of whether that offense necessarily was one that "related to" "sexual abuse" or "abusive sexual contact/conduct involving a minor."

To do so, the Court looked to Vado's Judgment of Conviction, *see* Def. Decl., Ex. A, and the Indictment in the New Jersey case, *see id.* Ex. B. The Judgment of Conviction reveals that Vado pled guilty to Counts Seven and Eight of the eight-count Indictment. Those two counts are identical, except insofar as each recites the initials of the victims associated with that count. Each of these two counts charged Vado with "commit[ting] an act of sexual contact with himself when [the victim was] at least 13 but less than 16 years old and MATTHEW VADO was at least 4 years older than [the victim] for the purpose of sexually arousing or sexually gratifying himself and/or to degrade or humiliate [the victim] contrary to the provisions of N.J.S.A. 2C:14-3b." *Id.* at 2; *see also* Stip. ¶¶ 1–2.

Based on these materials, the parties agree, and the Court finds, that Vado pled guilty to conduct encompassed by § 2C:14-2c(4). *See* Def. Br. 3; Gov. Br. 6 n.1. Thus, the Court finds that the elements of the offense to which Vado pled guilty were: (1) causing an intentional touching by the victim or the defendant, either directly or through clothing, of the victim's or the defendant's intimate parts, (2) where the victim was between the ages of 13 and 16, and (3) for the purpose of sexually arousing or sexually gratifying the defendant and/or degrading or humiliating the victim.

### B.   Is Vado's New Jersey Offense Necessarily One Involving Sexual Abuse or Abusive Sexual Contact/Conduct Involving a Minor?

The parties dispute whether Vado's New Jersey offense is inherently one of sexual abuse or abusive sexual contact/conduct involving a minor. The dispute turns on the fact that the New Jersey statute applies not only where a defendant touches (directly or through clothing) his or a minor's "intimate parts" for the purpose of "sexually arousing or sexually gratifying" himself—a circumstance which would clearly fall within the federal penalty provisions—but also where a defendant does so solely "to degrade or humiliate" the minor. Vado argues that the terms

"sexual abuse" and "abusive sexual contact/conduct involving a minor" as used in the federal

penalty provisions do not encompass such conduct. The Government takes the opposite view.

This issue presents a question of statutory interpretation: In particular, does the word

"sexual" that modifies each form of abusive conduct listed in the federal penalty provisions

cover touching of intimate parts intended solely to humiliate or degrade the victim, as opposed to

for the purpose of sexual gratification or arousal?

In the first instance, the Court looks to see if the terms in question—"sexual abuse,"

"abusive sexual contact," and "abusive sexual conduct"—are defined in the statute. Regrettably,

they are not. The penalty provisions appear in Chapter 110 of the Federal Criminal Code, which

contains a definition section but does not define those terms. *See* 18 U.S.C. § 2256.

Absent a statutory definition, the Court uses familiar canons of statutory interpretation to

construe these terms. A fundamental canon "'is that, unless otherwise defined, words will be

interpreted as taking their ordinary, contemporary, common meaning.'" *Harris v. Sullivan*, 968

F.2d 263, 265 (2d Cir. 1992) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)); *see also*,

*e.g.*, *United States v. Jass*, 569 F.3d 47, 67 (2d Cir. 2009) ("[W]e employ basic rules of statutory

construction and give all terms . . . their ordinary meanings unless there are persuasive reasons

not to do so." (citation omitted) (omission in original)); *United States v. Concepcion*, 983 F.2d

369, 380 (2d Cir. 1992) ("In the absence of contrary congressional direction, we interpret the

language in accordance with its ordinary meaning.").

The relevant term here, "sexual," is commonly understood to mean "having or involving

sex." Merriam-Webster's Collegiate Dictionary 1074 (10th ed. 1998).[7] Consistent with this

---

[7] Other contemporary dictionaries contain similar definitions. *See, e.g.*, The American Heritage
Dictionary of the English Language 106 (5th ed. 2011) (defining "sexual" as "relating to,
involving, or characteristic of sex or sexuality, or the sex organs and their functions"); The

ordinary definition, courts interpreting § 2251 and § 2252A have typically defined "sexual,"
consistent with Vado's thesis, as meaning "for a purpose associated with sexual gratification."
*United States v. Allen*, 750 F.3d 209, 212 (2d Cir. 2014) (relying on "the ordinary meaning of the
term sexual abuse of a minor"); *see also*, *e.g.*, *United States v. Simard*, 731 F.3d 156, 162–63 (2d
Cir. 2013); *Barker*, 723 F.3d at 324; *United States v. Colson*, 683 F.3d 507, 510 (4th Cir. 2012);
*United States v. Sonnenberg*, 556 F.3d 667, 671 (8th Cir. 2009); *United States v. Hubbard*, 480
F.3d 341, 348–49 (5th Cir. 2007); *United States v. Stevens*, 158 F. App'x 133, 136 (10th Cir.
2005) (summary order); *United States v. Padilla-Reyes*, 247 F.3d 1158, 1163 (11th Cir. 2001).
None of these courts has stated that this term also applies to intimate touching motivated solely
by an intent to degrade or humiliate.

To be sure, in none of these cases was the court squarely presented with the question of
whether touching intimate parts "for the purpose of degrading or humiliating the victim," *see*
N.J. Stat. Ann. § 2C:14-1, rather than for purposes of arousal or gratification, also qualifies as
"sexual." Accordingly, the apparent consensus among the courts to the effect that the statutory
term "sexual" refers to purposes associated with gratification is not conclusive. These courts
may have defined "sexual" in terms of gratification or arousal simply because such is the
ordinary context in which that term is used, with no occasion to consider whether the term might
also apply to intimate touching motivated by other purposes.

Shortly before argument, the Court discovered, and issued an order directing the parties'
attention to, 18 U.S.C. § 2246, a separate federal provision situated in a different chapter,

---

Oxford English Dictionary, Vol. XV 115 (2d ed. 1989) (defining "sexual" as "relative to the
physical intercourse between the sexes or the gratification of sexual appetites"); American
Heritage Dictionary 1124 (2d College ed. 1982) (defining "sexual" as "implying or symbolizing
erotic desires or activity").

Chapter 109A, of Title 18.  *See* Dkt. 38.  Section 2246 defines "sexual contact" as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, *humiliate*, harass, *degrade*, or arouse or gratify the sexual desire of any person."  18 U.S.C. § 2246(3) (emphasis added).  That definition tracks the New Jersey sexual contact statute, utilizing the same verbs—"humiliate" and "degrade."  Were § 2246(3) used to give meaning to the term "sexual contact" as used in § 2251(e)—and extended to the term "sexual conduct" in § 2252A(b)(1) and § 2252A(b)(2)—those penalty-enhancement provisions would be triggered here, as they would embrace all means by which the New Jersey statute can be violated.  The Court directed counsel, at argument and in post-argument briefing, to address whether the definition in § 2246 applies to the sentencing enhancements in § 2251 or § 2252A.  Both the Government and Vado submitted thoughtful briefs on that point.  *See* Dkt. 40, 41.

Although the matter is by no means free from doubt, the Court is, on balance, persuaded that the definition that Congress used in § 2246 was not intended to carry over to § 2251 or § 2252A.  As defense counsel noted, § 2251 and § 2252A are situated in Chapter 110 of Title 18, which governs "sexual exploitation and other abuse of children," whereas § 2246 supplies definitions for Chapter 109A, which governs "sexual abuse."  18 U.S.C. § 2246 (defining terms "[a]s used in this chapter").  The statutes were also enacted far apart in time:  § 2251 and § 2252A were enacted in 2006 as part of the Adam Walsh Child Protection and Safety Act, Pub. L. No. 109-248, whereas § 2246 was enacted 20 years earlier, as part of the Sexual Abuse Act of 1986, Pub. L. No. 99-646.  It cannot therefore be presumed that Congress intended the term "sexual contact" to have the same meaning in both sections.  *See United States v. Kleiner*, 765 F.3d 155, 159 (2d Cir. 2014) ("normal rule" is that "identical words used in different parts *of the*

*same act* are intended to have the same meaning" (quoting *Dep't of Revenue of Or. v. ACF Indus., Inc.*, 510 U.S. 332, 342 (1994)) (internal quotation marks omitted) (emphasis added)).

Also significant, other sections of the Adam Walsh Act explicitly incorporated provisions from Chapter 109A. *See* 42 U.S.C. § 16911 (referring to "abusive sexual contact" "as described in section 2244 of Title 18" and "sexual abuse" "as described in sections 2241 and 2242 of Title 18"). And other sections of the Federal Code have expressly incorporated the definitions used in § 2246. *See, e.g.*, 18 U.S.C. § 2441 ("[T]he term 'sexual contact' shall be applied . . . in accordance with the meaning given that term in section 2246(3) of this title."); 20 U.S.C. § 6777 ("The terms 'sexual act' and 'sexual contact' have the meanings given those terms in section 2246 of Title 18"); 47 U.S.C. § 254 (same). Sections 2251 and 2252A, by contrast, lack similar cross-references. Rather, they refer to Chapter 109A only to identify prior federal offenses that trigger the sentence enhancement provisions. *See* 18 U.S.C. § 2251(e) (increasing the mandatory minimum and maximum sentences where a defendant "has one prior conviction under this chapter, section 1591, chapter 71, *chapter 109A*, . . . or under the laws of any State relating to aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor") (emphasis added); *id.* § 2252A(b) (similar). The Court therefore infers that—whether Congress had in mind the same or a different definition of "sexual contact"—it did not affirmatively intend to incorporate the § 2246 definitions into § 2251 and § 2252A. *See Liu Meng-Lin v. Siemens AG*, 763 F.3d 175, 181 (2d Cir. 2014) ("'Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))).

14

Indeed, on this basis, six Courts of Appeals, including the Second Circuit, have found, as a general matter, no indication that Congress intended to incorporate Chapter 109A's definitions into Chapter 110. *See Barker*, 723 F.3d at 322; *United States v. Gilbert*, 425 F. App'x 212, 216 (4th Cir. 2011) (per curiam); *Sonnenberg*, 556 F.3d at 670; *United States v. Sinerius*, 504 F.3d 737, 742–44 (9th Cir. 2007); *Hubbard*, 480 F.3d at 347–48; *United States v. Harding*, 172 F. App'x 910, 913 (11th Cir. 2006) (per curiam).[8]  In *Barker*, for example, the Second Circuit declined to look to § 2243 in Chapter 109A to define "abusive" in § 2252.  723 F.3d at 322. Drawing an analogy to the immigration context, the Court noted that "'Congress purposefully did not employ cross-references for these generic crimes to ensure the incorporation of a broad range of diverse state statutory definitions.'"  *Id.* at 323 (quoting *Restrepo v. Attorney Gen. of U.S.*, 617 F.3d 787, 798 (3d Cir. 2010)).  To be sure, as the Government noted, these cases may be distinguished in that each addressed a circumstance in which application of a provision from Chapter 109A would have *narrowed* the universe of prior state-law offenses that triggered the sentencing enhancements in Chapter 110, *see* Gov. Supp. Br. 2, whereas Congress intended that § 2251(e) and § 2252A(b) be construed broadly.  However, as the case law reflects, that intent primarily affects the Court's construction of the statutory term "relating to," not the construction of the embedded predicate offenses.  *See, e.g.*, *Barker*, 723 F.3d at 322–23.

In determining the scope of the term "sexual" as used in the § 2251 and § 2252A penalty provisions, the Court also finds instructive the Supreme Court's reasoning in *Johnson v. United*

---

[8] *United States v. Datillo*, 442 F. App'x 187 (6th Cir. 2011) (unpublished opinion), is not to the contrary.  There, the Sixth Circuit declined to resolve, one way or the other, whether courts should construe the undefined offenses in Chapter 110 according to the definitions in Chapter 109A.  *Id.* at 190–91 & n.4.  And while the Seventh Circuit in *United States v. Osborne*, 551 F.3d 718 (7th Cir. 2009), looked to § 2246 and other sections of the Federal Code to "shed light on how Congress understood" the term "abusive," *id.* at 720, it did not incorporate the definition from § 2246, or use that definition to displace the ordinary meaning of that term.

*States*, 559 U.S. 133 (2010), which similarly involved the breadth of an undefined term in a sentence-enhancement statute. At issue in *Johnson* was the penalty provision of the ACCA, which increases the mandatory minimum sentence for a defendant who "has three previous convictions . . . for a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e)(1). That section defines "violent felony" as a crime that, in relevant part, "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 924(e)(2)(B)(i). The Court noted that § 924 does not define "physical force," and so the "ordinary meaning" of the term applies. *Johnson*, 559 U.S. at 138. The Court observed, however, that "'force' has a number of meanings" including "a more specialized legal usage" that encompasses "even the slightest offensive touching." *Id.* at 138–39. In construing the term "violent felony," the Court rejected that broad definition as inapt. It held that, to qualify as a use of physical force within the meaning of the penalty provision, the previous conviction must have involved "force capable of causing physical pain or injury to another person." *Id.* at 140. The Court explained: "[W]e do not assume that a statutory word is used as a term of art where that meaning does not fit. Ultimately, context determines meaning." *Id.* at 139.

Here, too, the Court is presented with two constructions of a term used in a penalty provision—the term "sexual" as used in the § 2251 and § 2252A terms "sexual abuse" and "abusive sexual contact/conduct involving a minor." And as with the competing definitions of "force" at issue in *Johnson*, one definition here is a familiar, mainstream one (defining "sexual" as referring to intimate touching motivated by a desire for gratification or arousal) while the other is a more specialized term of art (defining "sexual" to also refer to intimate touching motivated by a desire to humiliate or degrade the victim). *Johnson*'s logic supports adopting the familiar, mainstream definition, not broadening it to pick up a "term of art" definition that "does

not fit" nearly as well. *Johnson*, 559 U.S. at 139. Indeed, in one respect, Vado's claim here is stronger than the defendant's in *Johnson*, where the specialized or "term of art" meaning that the Court rejected had "a well-established meaning at common law." *Johnson*, 559 U.S. at 146 (Alito, J., dissenting). In contrast, the definition of "sexual" used in the New Jersey statute, although not unique, *see, e.g.*, 18 U.S.C. § 2246(3), is substantially more esoteric than the familiar understanding of "sexual" as connoting a desire for erotic gratification or arousal.

Accordingly, as a matter of statutory interpretation, the Court holds, consistent with the ordinary meaning of "sexual" as connoting "for a purpose associated with sexual gratification," *Allen*, 750 F.3d at 212, that the penalty provisions at issue here—§ 2251(e), § 2252A(b)(1), and § 2252A(b)(2)—contemplate acts of sexual abuse or abusive sexual contact/conduct involving a minor undertaken for the purpose of gratification or arousal, not to humiliate or degrade a victim. In so holding, the Court recognizes that the question is a reasonably close one. But the weight of authority, including the Supreme Court's analytic framework in *Johnson* and the constructions of these penalty provisions that other courts have articulated, favor this familiar construction.[9]

Given this holding, the New Jersey criminal sexual contact statute under which Vado was convicted necessarily encompasses a range of conduct broader than sexual abuse and abusive sexual contact/conduct involving a minor because that statute alone applies to conduct undertaken solely "for the purpose of degrading or humiliating the victim." N.J. Stat. Ann.

---

[9] Were the statute held ambiguous, the rule of lenity would oblige the Court to "choose the construction yielding the shorter sentence" and, therefore, to reach the same outcome. *United States v. R.L.C.*, 503 U.S. 291, 305 (1992); *see also Yates v. United States*, 135 S. Ct. 1074, 1088 (2015) ("'[I]t is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite.'" (quoting *Cleveland v. United States*, 531 U.S. 12, 25 (2000))).

§ 2C:14-1.  The predicate offenses listed in § 2251(e), § 2252A(b)(1), and § 2252A(b)(2) do not,

therefore, include Vado's prior conviction.

### C.    Is Vado's Prior Conviction Related To Sexual Abuse?

The Court's construction of the predicate offenses listed in § 2251(e), § 2252A(b)(1), and

§ 2252A(b)(2) does not end the analysis, however, because these provisions also apply to prior

convictions "relating to" the listed predicate offenses.  They "apply not simply to state offenses

that are equivalent to sexual abuse, but rather to any state offense that stands in some relation

[to], bears upon, or is associated with [the] generic offense." *Barker*, 723 F.3d at 323 (citation

omitted) (alterations in original); *see also id.* at 323–24 (the state statute "need not mirror" a

federal statute, "meet a precise federal statutory formula," "or otherwise criminalize comparable

conduct").  Accordingly, the Court must resolve whether the phrase "relating to" bridges the gap

between the predicate offenses (sexual abuse and abusive sexual contact/conduct involving a

minor) as ordinarily defined, and criminal sexual contact as defined by the New Jersey statute.

Two Second Circuit decisions provide some parameters for this analysis.  In *United*

*States v. Beardsley*, 691 F.3d 252 (2d Cir. 2012), the defendant was convicted of receipt and

possession of child pornography in violation of § 2252A.  *Id.* at 254.  The district court held that

his prior state conviction for endangering the welfare of a child under New York law triggered

the federal sentence-enhancement provision.  *See id.*  New York's "Endangering the Welfare of a

Child" statute provides, in relevant part, that:

> A person is guilty of endangering the welfare of a child when:
>
> 1.  He or she knowingly acts in a manner likely to be injurious to the physical,
> mental or moral welfare of a child less than seventeen years old or directs or
> authorizes such child to engage in an occupation involving a substantial risk of
> danger to his or her life or health.

N.Y. Penal Law § 260.10(1).

On appeal, the Second Circuit reversed.  It held that the defendant's prior conviction did not "relate to sexual abuse of minors."  *Beardsley*, 691 F.3d at 269.  As the court explained:

> Although no one doubts that aggravated sexual abuse does endanger the welfare of a child, the New York statute is not a law dealing with sexual misconduct.  Rather, it covers a wide variety of conduct, most of it nonsexual, that shares only the general defining characteristic of the endangerment of children in any way at all. . . .  The statute relates to minors, but it does not define any offense that specifically relates to sexual abuse.

*Id.*  Similarly, the Court reasoned, a hypothetical conviction for "patronizing a prostitute" would not "relate to the sexual abuse of minors" because that offense encompasses both conduct that involves a minor and conduct that does not.  *Id.*  The Court thus characterized the central elements of "sexual abuse of a minor" as conduct that (a) involves sexual, as opposed to non-sexual, abuse, and (b) involves a minor.  If a state statute does not require either of these elements, the Court held, it is too broad to "relate to" sexual abuse of a minor and, therefore, does not qualify as a predicate offense under § 2252A.

*United States v. Barker*, 723 F.3d 315 (2d Cir. 2013), in contrast, reflects an instance in which a prior conviction clearly did "relat[e] to" an enumerated predicate offense.  The defendant, who pled guilty to possession of child pornography in violation of § 2252A, had a prior conviction for statutory rape under Vermont law.  *Id.* at 324.  As its decision reflects, the Second Circuit had no difficulty concluding that the prior conviction triggered the federal sentence enhancement.  As the Court explained, "a law that proscribes non-consensual sexual acts with a minor victim addresses, by its nature, 'abusive sexual conduct involving a minor,' defined ordinarily as 'misuse or maltreatment of a minor for a purpose associated with sexual gratification.'"  *Id.* (quoting *Sonnenberg*, 556 F.3d at 671).

The New Jersey criminal sexual contact statue lies somewhere between the New York child endangerment law and the Vermont statutory rape law.  Unlike the former, the New Jersey

law is not "categorically distinct" from sexual abuse laws, *Beardsley*, 691 F.3d at 274; unlike the latter, it is not "unquestionably" related in all applications to such laws, *Barker*, 723 F.3d at 324. Rather, the New Jersey statute predominantly covers acts of sexual abuse but, as construed here, encompasses some outlier conduct involving the touching of intimate parts for non-sexual purposes (*i.e.*, to degrade or humiliate the victim). Under the categorical approach, however, it is these outlier applications of the New Jersey statute that dictate whether a conviction under that law necessarily "relat[es] to" the predicate offenses identified in § 2251(e), § 2252A(b)(1), and § 2252A(b)(2).

The Court has identified two recent cases that presented analogous problems. First, in *United States v. Sullivan*, No. 08 Cr. 280 (JFM), 2010 WL 2431719 (M.D. Pa. June 14, 2010), the defendant had been convicted of distributing child pornography in violation of § 2252A and had a prior conviction for, among others, "visual sexual aggression against a child" under Maine law. *Id.* at *3. The Maine statute provides, in relevant part, that:

1. A person is guilty of visual sexual aggression against a child if:

> A. For the purpose of arousing or gratifying sexual desire *or for the purpose of causing affront or alarm*, the actor, having in fact attained 18 years of age, exposes the actor's genitals to another person or causes the other person to expose that person's genitals to the actor and the other person, not the actor's spouse, has not in fact attained 14 years of age.

Me. Rev. Stat. tit. 17-A, § 256 (emphasis added). A defendant could, therefore be convicted under this provision "for exposing himself or herself simply to cause 'affront or alarm,'" and not for a purpose associated with sexual gratification. *Sullivan*, 2010 WL 2431719, at *4. The sentencing judge, the Honorable James F. McClure, held that this prior state-law conviction did not trigger the federal sentence enhancement because the Maine statute is "too broad" and not inherently of the "'sexual' nature" required by § 2252A. *Id.*

Second, in *United States v. Linngren*, 652 F.3d 868 (8th Cir. 2011), the defendant had

pled guilty to distribution of child pornography in violation of § 2252 and had a prior conviction

for "criminal sexual conduct" in violation of Minnesota law.  Under the Minnesota criminal

sexual conduct statute:

> A person is guilty of criminal sexual conduct in the fifth degree:
> > (1) if the person engages in nonconsensual sexual contact; or
> > (2) the person engages in masturbation or lewd exhibition of the genitals in the presence of a minor under the age of 16, knowing or having reason to know the minor is present.
>
> For purposes of this section, "sexual contact" has the meaning given in section 609.341, subdivision 11, paragraph (a), clauses (i) and (iv), but does not include the intentional touching of the clothing covering the immediate area of the buttocks. Sexual contact also includes the intentional removal or attempted removal of clothing covering the complainant's intimate parts or undergarments, and the nonconsensual touching by the complainant of the actor's intimate parts, effected by the actor, if the action is performed with *sexual or aggressive intent*.

Minn. Stat. Ann. § 609.3451 (emphasis added).  The definition section provides that:

> "Sexual contact" . . . includes any of the following acts committed without the complainant's consent, except in those cases where consent is not a defense, and committed with *sexual or aggressive intent*:
> > (i) the intentional touching by the actor of the complainant's intimate parts, or
> >
> > . . .
> >
> > (iv) in any of the cases above, the touching of the clothing covering the immediate area of the intimate parts . . . .

*Id.* § 609.341 (emphasis added).  The majority of the Eighth Circuit panel acknowledged that

"the [Minnesota] statute is overinclusive because it includes acts committed with aggressive

intent" as well as with sexual intent. *Linngren*, 652 F.3d at 870.  And it acknowledged that an

offense committed with aggressive intent would not qualify as a predicate offense. *Id.*  Applying

the modified categorical approach, however, the majority of the panel looked to the probable

cause statement in the complaint to determine whether the prior offense had been committed

with sexual or aggressive intent. *See id.* at 871.  The majority "conclude[d] that because the only

plausible reading of the complaint establishes that Linngren committed the offense with sexual intent, the prior conviction related to sexual abuse." *Id.* at 872.

In dissent, Judge Bye argued that, in applying the modified categorical approach, the majority should not have considered the probable cause statement in the complaint; he also disagreed with the majority's construction of the complaint as revealing that Linngren acted with sexual intent, finding that it "provides no express indication as to which intent underlines Linngren's prior conviction." *Id.* at 876–77 (Bye, J., dissenting). Judge Bye, like the panel majority, noted that "[a] prior conviction relates to sexual abuse of a minor only if it was committed with 'intent to seek libidinal gratification.'" *Id.* at 872 (quoting *Sonnenberg*, 556 F.3d at 671). Because the Minnesota statute reaches acts committed solely with "aggressive intent," as opposed to "sexual intent," Judge Bye concluded that Linngren's prior conviction was not "related to" sexual abuse of a minor and did not justify enhancing his sentence. 652 F.3d at 878. And while Linngren's prior conviction was "*likely* based" on sexual intent, Judge Bye noted, "the modified categorical approach is not met with 'likely.'" *Id.* at 877.

For the following reasons, this Court agrees with Judge McClure and Judge Bye[10] that an offense does not "relate to" sexual abuse or abusive sexual contact/conduct involving a minor if it can be committed with both sexual and non-sexual intent. Accordingly, Vado's prior conviction under the New Jersey criminal sexual contact statute, which extends to acts

---

[10] Although the *Linngren* panel majority was not explicit on this point, it is reasonable to infer that it, like Judge Bye, did not believe that a prior conviction under the Minnesota statute based on "aggressive intent" also would "relat[e] to" sexual abuse. Had the panel majority believed otherwise, there would have been no need for it to undertake a modified categorical analysis to identify, as the basis for Linngren's particular conviction, the subset of the statute directed to actions undertaken with sexual intent. On this Court's reading, Judge Bye's disagreement with the panel majority solely concerned the propriety of its modified categorical analysis in the case at hand.

committed with non-sexual intent, does not trigger the sentence enhancements under § 2251(e), § 2252A(b)(1), or § 2252A(b)(2).[11]

First, the New Jersey statute, given its broad terms, covers a range of conduct that is far afield from conduct undertaken for purposes of sexual gratification or arousal. The statute applies to acts of touching intimate parts either directly or through clothing. And the New Jersey Supreme Court has confirmed that, under the plain language of that statute, "intentional touching must be for at least one of four purposes: either degrading or humiliating the victim, or sexually arousing or sexually gratifying the defendant-actor." *State v. Zeidell*, 154 N.J. 417, 428 (1998). The statue therefore criminalizes such utterly non-sexual conduct as an adult spanking a child on the buttocks to humiliate him or her, a high-school student ostentatiously grabbing his or her own buttocks or genitals to signal "you are this" to a rival as a sign of ultimate disrespect, a fraternity brother mooning (or worse) a crowd that included youngsters during a public event, or a police officer conducting an unnecessary pat-down or cavity search to degrade a young suspect. Such conduct, however offensive and meriting of prosecution it may be, is a long way from "sexual abuse" as that term is commonly understood. In no vernacular sense of the term can such acts be considered "relating to" sexual abuse.

The possibility of prosecution under the New Jersey statute for non-sexual conduct is not merely hypothetical: In 2008, two 14-year-old boys were charged with criminal sexual contact under § 2C:14-3 for "plac[ing] their bare buttocks on the faces of the two younger boys . . . for the purpose of degrading or humiliating the younger boys." *State ex rel. B.P.C.*, 421 N.J. Super. 329, 336 (2011). Both were convicted, one via guilty plea and the other following a bench trial.

---

[11] Because the Court finds for Vado on this ground, it has no occasion to reach his other arguments for not applying the sentence enhancements. *See* Def. Br. 14–18.

*Id.* At trial, the latter boy testified that he engaged in the offensive conduct because he "thought it was funny" and "was trying to impress" his friends. *Id.* at 341–42. The trial court therefore found that he "committed these acts to 'humiliate' or 'degrade' his victims, but not for 'sexual gratification.'" *Id.* at 342. On appeal, the New Jersey Superior Court held that the evidence was sufficient to support a conviction on that ground because, "[a]lthough [the boys] may not have done this for their own sexual gratification, the record showed that the victims were humiliated and degraded by this message of sexual prowess and domination." *Id.* at 345. In so holding, the Court unequivocally confirmed that the law applies to some "classic bullying situation[s]," "teenage pranks," and "juvenile horseplay." *Id.* at 342–43.

As such, the New Jersey statute applies to a wide swath of conduct, including various forms of bullying or hazing, that cannot be characterized as "sexual abuse." While the Court does not condone such conduct, it is, by its nature, a far cry from the types of serious sexual offense to which the sentence enhancements in § 2251 and § 2252A are addressed. The Court has found no case that has distended "relating to" that far. Rather, courts have concluded that state-law offenses "related to" sexual abuse or abusive sexual conduct only where those offenses are fundamentally sexual in character. *See, e.g.*, *United States v. Mathis*, 767 F.3d 1264, 1284 (11th Cir. 2014), *cert. denied*, No. 14-7814, 2015 WL 732182 (Feb. 23, 2015) (lewd or lascivious assault on a minor); *Colson*, 683 F.3d at 511–12 (lewd exhibition of nudity); *United States v. McGarity*, 669 F.3d 1218, 1262 (11th Cir. 2012) (enticing a child for indecent purposes); *United States v. Wiles*, 642 F.3d 1198, 1201 (9th Cir. 2011) (attempted sexual assault); *United States v. Becker*, 625 F.3d 1309, 1312 (10th Cir. 2010) (indecent solicitation of a child); *United States v. Stults*, 575 F.3d 834, 844 (8th Cir. 2009) (attempted sexual assault on a

child); *Hubbard*, 480 F.3d at 347 (attempt to make lewd or indecent proposals); *United States v. Weis*, 487 F.3d 1148, 1152 (8th Cir. 2007) (assault with intent to commit sexual abuse).

Second, the rule of lenity demands that the Court, in situations of ambiguity, "choose the construction yielding the shorter sentence." *R.L.C.*, 503 U.S. at 305.  To be clear, the Court's determination here is, affirmatively, that the New Jersey statute does not categorically "relat[e] to" sexual abuse, not that the federal penalty provisions are ambiguous.  But even allowing for some difference of opinion on this point, the Court sees no credible scenario under which the New Jersey statute could be affirmatively held, in all applications, to "relat[e] to" sexual abuse. At best for the Government, the issue is ambiguous—the outcome is in equipoise.

Under these circumstances, the rule of lenity comes into play.  The rule is one "of last resort" to cover circumstances in which a court has "read the plain language of [the statute], considered the traditional canons of statutory construction, looked for legislative history, and canvassed potentially relevant case law," and yet "the statute's ambiguity makes it impossible" to interpret the provision at issue "without simply guessing about congressional intent." *United States v. Dauray*, 215 F.3d 257, 264–65 (2d Cir. 2000) (citation omitted).  Faced with such ambiguity, the Court must apply the construction most favorable to the defendant. *See United States v. Bass*, 404 U.S. 336, 348 (1971) ("[W]here there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant."); *United States v. Venturella*, 391 F.3d 120, 132 (2d Cir. 2004) ("The rule 'requires the sentencing court to impose the lesser of two penalties where there is an actual ambiguity over which penalty should apply.'" (quoting *United States v. Canales*, 91 F.3d 363, 367 (2d Cir. 1996)).  Here, a finding that the three sentence enhancements provisions are applicable would increase the mandatory minimum sentence of imprisonment Vado faces for each offense by 10 years, and would also raise the maximum sentence that the

Court may impose.  Because the case for applying these provisions to Vado is no better than ambiguous, the rule of lenity precludes doing so.  *See Bass*, 404 U.S. at 348.

**CONCLUSION**

For the foregoing reasons, the Court holds that Vado's prior conviction for criminal sexual contact under New Jersey law does not trigger the sentence enhancements in § 2251(e), § 2252A(b)(1), or § 2252A(b)(2).  The Clerk of Court is directed to terminate the motion pending at docket number 34.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: April 10, 2015
      New York, New York