UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW VADO, <br><br> Petitioner, <br> -v- <br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | 18 Civ. 9310 (PAE) <br><br> 14 Cr. 666-1 (PAE) <br><br> <u>ORDER</u> |

PAUL A. ENGELMAYER, District Judge:

The Court has reviewed the *pro se* petition of Matthew Vado for relief pursuant to 28 U.S.C. § 2255. Dkt. 1 in 18 Civ. 9310. The Court has also reviewed the parties' ensuing filings. These include Vado's memorandum of law, Dkt. 2 in 18 Civ. 9310 ("D. Mem."), the Government's memorandum of law in opposition, Dkt. 81 in 14 Cr. 666, and Vado's reply, Dkt. 7 in 18 Civ. 9310.[1]

Vado principally argues that his representation by the Federal Defenders of New York was ineffective. For the reasons that follow, as more fully developed in the Government's memorandum of law in opposition which the Court here incorporates here by reference, the Court denies Vado's petition.

1. Vado's ineffective assistance claim is governed by the familiar two-part standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1985). A petitioner must (1) show that his counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms," *id.* at 687–88, and (2) "affirmatively prove prejudice," *id.* at 693. Vado

---

[1] Unless otherwise specified, docket entries cited in this decision are from Vado's underlying criminal case, 14 Cr. 666.

does not come remotely close to establishing either, let alone both. On the contrary, Vado's self-serving post-conviction attack on his exceptionally able and energetic counsel is cynical and meritless. His claim of ineffective assistance, and of a series of ostensible "unprofessional" lapses, wrongly demeans a highly dedicated and talented lawyer who demonstrated impressive commitment to Vado's challenging cause.

2. As to the first *Strickland* prong, whether Vado's representation fell below an objective standard of reasonableness, Vado's counsel, Daniel Habib, Esq., was extraordinarily energetic in defending Vado's interests, in the face of overwhelming, indeed conclusive, proof of Vado's guilt of serious sex offenses. The Court became familiar with the extent and nature of this evidence from the complaint; from extensive pretrial conferences and motions practice, including a suppression hearing; and from the sentencing process, during which, in addition to reviewing the presentence report, the Court reviewed a representative sample of the child pornography created and accessed by Vado that was found resident on his computer.

Among other evidence, a search pursuant to a warrant of Vado's home and computer, prompted by complaints from a 9-year-old girl whom Vado had lured over the Internet to produce child pornography, revealed capacious evidence of Vado's having accessed, and also extensively produced, child pornography. These electronic records captured Vado's extensive videographic and text communications with young girls, whom Vado enticed and instructed to engage in sexual activity. At points, Vado threatened these girls, telling them that if they did not send him the sexually explicit images or videos that he was requesting, he would publicize the materials of this nature that they had already set him, on Facebook or other media and/or to their friends and families. Two of these victims appeared to be crying in the sexually explicit films

2

that they sent to Vado after he had threatened them. Vado's computer independently contained extensive child pornography that he had downloaded.

Vado was also interviewed following the initiation of the search and made various incriminating statements. These included stating that he had engaged in sexually explicit chats and exchanged sexually explicit photographs with a minor through an Internet application. He also admitted to the use of certain screen names and Internet accounts associated with the child pornography that he generated and accessed.

There was thus overwhelming evidence—primarily, unimpeachable physical evidence—of Vado's guilt of gravely serious sex offenses involving numerous victims.

In the face of this high degree of difficulty, Vado's counsel energetically defended Vado's interests at every stage. Counsel moved to suppress Vado's incriminating statements. He forcefully pursued claims that these statements had been the product of custodial interrogation, that the agents had violated Vado's right to counsel, and that Vado's statements had not been voluntarily made. Although the Court denied Vado's motion to suppress, *see* Dkt. 30, this ruling, as the Court's written decision makes apparent, followed from the facts regarding these events, not any lapse in advocacy.

Vado's counsel also vigorously litigated an issue with major ramifications for sentencing: the impact of one of Vado's two prior convictions for sex offenses—his 2011 conviction for the New Jersey offense of criminal sexual contact in the fourth degree, N.J. Stat. Ann § 2C:14-3—on the sentence enhancement provisions of the federal child-pornography statutes with which Vado stood charged. These were for the production, receipt, and possession of child pornography, in violation, respectively, of 18 U.S.C. §§ 2251(a), 2252A(a)(2)(B), and 2252A(a)(5)(B). Persuaded by defense counsel, the Court ruled, in a written decision identifying the question as

3

close, that Vado's New Jersey conviction would not trigger the federal sentence enhancement. *See* Dkt. 45.

Eventually, Vado agreed to plead guilty. He did so without a plea agreement. As a result of the Court's ruling that his New Jersey conviction did not trigger a sentence enhancement, Vado faced a mandatory minimum sentence of 15 years imprisonment. Dkt. 55 ("Plea Tr.") at 10. Had the Court ruled otherwise, Vado would have faced a 25-year mandatory minimum sentence under 18 U.S.C. § 2251(e).

Finally, at sentencing, Vado's counsel represented him vigorously and well. The Sentencing Guidelines called for a sentence of life imprisonment. Vado's counsel amassed impressive evidence in mitigation, including with respect to Vado's asserted psychological idiosyncrasies and infirmities, other pertinent background, and Vado's positive adjustment to incarceration. *See generally* Dkt. 62 ("D. Submission") and associated exhibits. Vado's counsel also marshalled numerous impressive character letters on Vado's behalf from friends and family. *See id*. And counsel, in his sentencing submissions and at sentencing, powerfully argued for the mandatory minimum sentence. *See* D. Submission at 1; Dkt. 65 at 5; Dkt. 74 ("Sentencing Tr.") at 29–39. The Court's resulting sentence, of 30 years imprisonment, did not reflect any deficit in defense advocacy—far from it. As the Court's extended remarks at sentencing explained, the sentence reflected the Court's assessment that the 18 U.S.C. § 3553(a) factors—including the seriousness of the offense, the need to protect the public and particularly young girls from future predations by Vado, and specific and general deterrence—compelled a term of this length. *See* Sentencing Tr. at 44–84.

Vado's counsel also ably represented him on appeal, challenging the sentence imposed as procedurally and substantively unreasonable. On June 7, 2017, however, the Second Circuit affirmed. *See* Dkt. 78.

In sum, Vado's counsel's representation was far better than objectively reasonable—it was vigorous, enterprising, and estimable. Simply put, Vado's decision to plead guilty, and his sentence, resulted from the overwhelming evidence of his many loathesome sex offenses. Vado, not any deficiency in his representation, is responsible for that.

Vado's six arguments as to his counsel's purported lapses are quickly put to one side.

Vado first faults his counsel for not objecting to an *ex parte* contact that Vado claims the Court appeared to have had with a man whom Vado alleges appeared to have been the father of one of Vado's victims, Victim-1. Vado bases this claim on the representation by his great aunt that, before the sentencing, she saw this man enter the Court's "chambers"; that she later recognized him when he addressed the Court, in open court, during sentencing; and that she inferred that the Court had had *ex parte* communications with this man. There is good reason why Vado's counsel did not object to this *ex parte* conduct. It did not happen. The Court did not have any *ex parte* contact with the father of Victim-1 or any other person in connection with this case. The Court's only communications with the father of Victim-1 instead entailed (1) reviewing the father's victim-impact letter (which was part of the sentencing record and provided to defense counsel); (2) hearing the father's victim-impact statement as delivered in open court; and (3) commenting, in open court, on that statement. *See* Sentencing Tr. at 3, 8–9, 23–28, 58. Whether Vado's great aunt is deliberately fabricating this incident or innocently in error in recounting and interpreting her observations from long ago, her claim is factually false.

Vado next argues that his counsel was ineffective for failing to move for the dismissal of the indictment because the grand jury had not presented or returned it in open court. Vado misunderstands the grand jury process, which is conducted in secret. *See* Fed. R. Crim. P. 6(e). He does not allege any actual infirmity in the process by which the indictment here was returned, let alone any infirmity of which his counsel was on notice.

Vado next argues that his counsel was ineffective for, ostensibly, failing to advise him that his guilty plea made it possible that his sentence of incarceration could be followed by his civil commitment. Vado's claim to have been unaware of this possibility is highly doubtful. Vado had twice before been convicted of sex offenses. And his counsel, in his sentencing submission and at sentencing in Vado's presence, noted the possibility of civil commitment, indeed using it as an argument for a shorter term of imprisonment. *See* D. Submission at 14; Sentencing Tr. at 84. In taking Vado's guilty plea, the Court also notified Vado that he might serve up to a life term of post-imprisonment supervised release and that his guilty plea could result in the loss of valuable civil rights, and Vado acknowledged awareness of these possibilities. Plea Tr. at 11–12. Vado does not claim a deficiency in the guilty plea colloquy. Nor, notably, is Vado's claim to have not been uninformed of the possibility of post-imprisonment civil commitment supported by any attestation to this effect by his trial counsel.

Even assuming *arguendo* that Vado's counsel did not notify him of the possibility of post-imprisonment commitment, this lapse would not render counsel's overall representation below an objective standard of reasonableness. And it blinkers credibility that Vado's decision to plead guilty (without a plea agreement) would have been different had he learned that his sex offenses carried the possibility of post-sentencing civil commitment. Facing a Guideline range of life imprisonment and conclusive evidence of his guilt of heinous crimes, Vado's only rational

choice was the one he made: to accept responsibility and seek a below-Guidelines sentence on the basis of the mitigating facts that could be mustered on his behalf. It is not credible to claim that had Vado known of this civil consequence, Vado would have denied guilt and proceeded to trial. Nor is it credible to claim that Vado otherwise would have taken some unspecified action to secure a plea agreement that somehow limited his sentencing exposure or "preclude[d] civil commitment." D. Mem. at 34.

Vado next argues that his counsel was ineffective for failing to move to suppress the fruits of the search, conducted pursuit to a warrant, of his apartment and computer. Vado failed to challenge this search on direct appeal. *See, e.g.*, *United States v. Dukes*, 727 F.2d 34, 41 (2d Cir. 1984) ("[C]ollateral attack is not a substitute for direct appeal and petitioners are therefore generally required to exhaust direct appeal before bringing a petition under § 2255."). Regardless, even if Vado's challenge to the search could properly be recast as claim of ineffective assistance, his theory that the search warrant was somehow defective is frivolous. Although Vado's precise grievance is elusive, he appears to view the warrant as overbroad or to claim that the agents who searched his electronic devices exceeded the scope of the warrant. Vado does not explain coherently why either of these claims is factually so. On the contrary, this Court became privy to the warrant, the affidavit supporting it, and the agents' conduct in executing it in the course of litigation over the separate suppression motion that Vado's counsel made, directed to the agents' interview of Vado the day of the search. The Court did not then perceive any legal lapse with respect to the warrant or its manner of execution.

Vado next suggests that his counsel did not investigate avenues relevant to sentencing and/or did not present factual or legal material that might have secured a lower sentence. This claim is conclusory and wholly non-specific. On the contrary, defense counsel's sentencing

submission, as noted, was thorough, thoughtful, and vigorous. This claim is frivolous, as is Vado's unspecific denunciation of his counsel's representation of him at sentencing as "unprofessional." The sentencing transcript reveals the opposite.

Finally, Vado claims that his counsel had an unspecified conflict of interest. Vado does not identify what that conflict is. The Court is unaware of any.

Vado therefore does not supply any basis on which to find that his counsel's performance was in any way deficient, let alone that it fell below an objective standard of reasonableness.

3. In light of the absence of any basis to find deficient representation, there is no need to consider the second *Strickland* prong, as to prejudice. The Court therefore notes only this: The evidence of Vado's offenses was conclusive. It was memorialized in full on Vado's computer and other associated devices. The Court reviewed this physical evidence in detail, in connection with the suppression hearing and sentencing. This was not a case in which the Government's ability to establish guilt turned on the credibility of witnesses. Vado's words and acts as captured on these media graphically established both his guilt and the presence, to an uncommon high degree, of the § 3553A factors that the Court determined necessitated a lengthy (albeit below-Guidelines) sentence. With the exception of Vado's claim that the search of his home and computer was unlawful, the lapses that Vado imagines, even if established, would not eliminate any of this damaging evidence. Vado's ineffective assistance claims ultimately fail to demonstrate coherently how any outcome other than the adjudication of guilt of the crimes charged (via conviction at trial or guilty plea) could have resulted in his case.

4. Vado separately brings a due process claim. He alleges that the Court failed to consider the sentence imposed on him in light of that imposed on similarly situated offenders.

This claim, too, was not brought on direct appeal, when Vado challenged his sentence as both procedurally and substantively deficient.

Even if properly brought under § 2255, Vado's claim is factually wrong. Immediately following Vado's guilty plea, the Court notified counsel that it was interested, in connection with sentencing, in the sentences imposed on sex offenders whose cases counsel viewed as similar to Vado's. *See* Plea Tr. at 24. Counsels' sentencing submissions supplied this data. *See* Dkt. 62-6; Dkt. 63 at 5–6; Dkt. 64. And at sentencing, the Court noted that it had considered Vado's case alongside potential comparators, and that the sentence it was imposing was "consistent with the pattern of cases and decisions rendered in other cases, recognizing that in the end [the Court] ha[s] to exercise [its] [] independent judgment as to how the Section 3553(a) factors apply." Sentencing Tr. at 85. The Court further stated that Vado's sentence was "easily harmonized with any of the other cases that [defense counsel] [] cited and it is more than justified by the facts particular to this case." *Id*. at 86; *see also id*. at 46, 56–57. Due process did not require any more.

For all the above reasons, and those stated in the Government's memorandum of law, the Court denies Vado's § 2255 petition as meritless. The Court also denies Vado's motion to strike and his renewed motion for discovery.

The Clerk of Court is respectfully directed to terminate the motions pending at dockets 79, 82, and 84 in 14 Cr. 666-1 and dockets 6 and 8 in 18 Civ. 9310 and to close this case.

The Court declines to issue a certificate of appealability and certifies that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: November 22, 2019
       New York, New York